**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 15-cv-00168-WJM-KLM

AARON ROJAS *ET AL.*

      Plaintiffs,

v.

WESTCO FRAMERS, LLC *ET AL.*

      Defendants.

**MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3) AND APPOINTMENT OF CLASS COUNSEL UNDER RULE 23(g)**

### CERTIFICATE OF CONFERAL PURSUANT TO D.C.COLO.LCIVR 7.1(A)

Plaintiffs' counsel conferred with Defendants' counsel prior to filing this Motion. The Defendants oppose this motion.

### I. INTRODUCTION

The named Plaintiffs and the class they seek to represent were brought to Wyoming by Defendant Westco to work as framers on a public works project building a senior center in Pinedale, Wyoming. The project was contracted by Sublette County, Defendant Groathouse was the principal contractor, and Defendant Westco was a subcontractor. The named Plaintiffs and the putative class worked on the project off and on from October 2013 to March 2014. All of the workers worked long hours, well in excess of forty in a week, and none of the workers were paid any of the overtime, which is guaranteed to laborers on public works projects by Wyoming statute. Here, the named Plaintiffs seek to certify a class to pursue this overtime against the

Wyoming public works bond that was executed by Groathouse, with Defendant Travelers acting as surety.[1]

## II. STATEMENT OF RELEVANT FACTS

Defendant Westco Framers, LLC (hereinafter, "Westco") is a Colorado construction contractor that is owned by Defendant Gray and provides framing services for construction projects. Ex. B, Westco 30(b)(6) at 6:6 to 8:6. The named Plaintiffs and those similarly situated (hereinafter, "the Workers") are all framers that provided framing services to Westco. Ex. B ¶ 6.

Defendant Groathouse Construction, Inc. (hereinafter, "Groathouse") was the principal contractor for the construction of the Sublette County Senior Center in Pinedale, Wyoming (hereinafter, "the Senior Center Project"). Doc. 36 at 5-6 (Scheduling Order Stipulations). Groathouse contracted Westco to provide framing services on the Senior Center Project and all of the Workers provided framing services on the Senior Center Project. *Id.*; Ex. A ¶ 6. Because the Senior Center Project was a public works project, Groathouse executed a bond or bonds for the project with Defendant Travelers Casualty and Surety Company of America (hereinafter "Travelers"). Doc. 36 at 5-6 (Scheduling Order Stipulations); Ex. C at 5 (Defendants' disclosures identifying the bonds); Ex. D (the bonds). Pursuant to the bond or bonds, Travelers guaranteed payment for labor performed on the Senior Center Project. Doc. 36 at 5-6 (Scheduling Order Stipulations); Ex. C at 5 (Defendants' disclosures identifying the bonds); Ex. D (the bonds).

---

[1] In their Second Amended Complaint, the named Plaintiffs also allege additional class action claims, including against Defendant Westco, and a FLSA collective action claim. After class discovery, the Plaintiffs are choosing to only bring the bond claim as a class claim for strategic reason. Additionally, the named Plainttiffs are choosing to not bring the FLSA collective action claim because Westco admitted in its deposition that it does not know where to find the other workers, making the approval and issuance of notice a waste of time. Moreover, recent case law in the District of Colorado draws into question whether FLSA collective actions can be certified. *See Turner v. Chipotle Mexican Grill, Inc.,* No. 1:14-CV-02612-JLK, 2015 WL 4979770 (D. Colo. Aug. 21, 2015). If Plaintiffs' counsel identifies additional FLSA claimants, it will simply seek to opt them in.

The Workers worked on the Senior Center Project from October 2013 to March 2014. Ex. B, Westco 30(b)(6) at 18:12 to 19:7, 26:1 to 28:1; Ex. 1 to Ex. B (Workers' time sheets). It is undisputed that, during at least some of these weeks, the workers all worked more than 40 hours in a week and were only paid straight time for their hours in excess of 40.[2] Ex. A ¶¶ 7-8; Ex. B, Westco 30(b)(6) at 98:24 to 99:5 ("Q: [D]id those framers sometimes work more than 40 hours a week? A: Yes. Q: Did any of them receive overtime pay or increased pay for time that they worked over 40 hours a week? A: No."); Ex. 1 to Ex. B (time sheets). Wyoming law guarantees overtime to laborers who work more than 40 hours per week on a public works project:

> (a) No person shall require laborers, workmen or mechanics to work more than eight (8) hours in any one (1) calendar day or forty (40) hours in any one (1) week upon any public works of the state or any of its political subdivisions except as hereafter authorized. An employee may agree to work more than eight (8) hours per day or more than forty (40) hours in any week, provided the employee shall be paid at the rate of one and one-half (1 1/2) times the regularly established hourly rate for all work in excess of forty (40) hours in any one (1) week.

Wyo. Stat. Ann. § 16-6-110. In their Second Amended Complaint, the named Plaintiffs seek to collect this unpaid overtime in their Count II claim against Groathouse and Traveler's public works' bond pursuant Wyo. Stat. Ann. § 16-6-113. *All* of the workers were required to work more than 40 hours per week and *none* of the workers received any overtime under Wyo. Stat. Ann. § 16-6-110. Based on this common policy, the named Plaintiffs allege that a class composed of all of the Workers is entitled to recover under Wyo. Stat. Ann. § 16-6-113 and seek to certify a class to that effect.

---

[2] The named Plaintiffs all were not paid *at all* for at least some of the hours they worked at the Senior Center Project. But the Plaintiffs only seek to certify a class based on their statutory overtime claims under Wyoming State Law. They will pursue the remainder of their claims individually.

### III. STANDARD OF REVIEW

In deciding whether or not to certify an F.R.C.P. 23 class action, "the court's first inquiry is whether the plaintiff can show the existence of the four threshold requirements of Rule 23(a) [*i.e.,* numerosity, commonality, typicality, and adequacy]. If the court finds that the plaintiffs have met these threshold requirements, it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)." *Shook v. El Paso County*, 386 F. 3d 963, 971 (10th Cir. 2004) (internal citations and quotations omitted).

### IV. PROPOSED CLASS

> ALL PERSONS WHO WORKED FOR WESTCO FRAMERS
> LLC ON THE SUBLETTE COUNTY SENIOR CENTER
> PROJECT

### V. THE CLASS SHOULD BE CERTIFIED

**A. The Fed. R. Civ. Proc. 23(a) Factors**

**1. Numerosity**

The proposed class is so "numerous that joinder of all members is impracticable." Fed. R. Civ. Proc. 23(a)(1). There were undisputedly between 20 and 26 persons who worked as framers for Westco on the Senior Center Project.[3] There is no strict number threshold for determining numerosity. Indeed, Courts have found smaller numbers sufficient. *See DeCoteau v. Raemisch*, 13-cv-3399-WJM-KMT (D. Colo. July 10, 2014) (citing *Dale Elec., Inc. v. R.C.L. Elecs., Inc.,* 53 F.R.D. 531, 534-36 (D.N.H. 1971) (13 members found sufficient)).

The core of the numerosity inquiry is whether it is *impracticable*, given the economic realities of the class members and the claims, for the members of the class to join. *David v. OXY*

---

[3] There is some confusion regarding the exact numbers, but it is undisputed that the number is between 20 and 26. The named Plaintiffs remember at least 20 persons in their group of Westco framers and an additional group of Westco framers of 4-6. Ex. A ¶ 6. Westco claims that approximately 20 persons worked for it on the Senior Center Project. Ex. B, Westco 30(b)(6) at 99:9 to 99:12 ("Q: … you said there were approximately 20, but not all 20 of the framers were onsite in March? A: Yes."). However, a precise number is unnecessary, and the distinction between 20 and 26 should not matter given the other factors cutting in favor of impracticability of joinder. Newberg on Class Actions § 3:13 (5th ed.).

*USA, INC.,* No. 07-1258-JTM (D. Kan. July 29, 2009) (citing *Commander Props Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 535 (D. Kan. 1995)) ("[N]umerosity and practicability of joinder are not determined simply by the number of potential class members, but instead depend on factors such as … the practical viability of individual suits."). As Newberg explains:

> [I]f individual claims are small and/or class members are financially unable to fund litigation themselves, individual joinder may be practically impossible. As one commentator has noted: "If the persons are unable to sue, then joinder may be deemed impractical because permissive joinder presupposes a 'group of economically powerful parties who are obviously able and willing to take care of their own interests.'" In this sense, Rule 23 enables litigation where it might otherwise not occur because of the impracticality of individuals joining together to pool their resources. It is not necessarily efficient for the litigation system itself to enable litigation in this manner, but small-claims class action serve social efficiency goals by forcing wrongdoers to internalize the costs of their actions.

Newberg on Class Actions § 3:11 (5th ed.) (citing authority). The Supreme Court has similarly considered the economic feasibility of joinder in determining impracticability. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 158 (1974) (there is numerosity if "[e]conomic reality dictates that petitioner's suit proceed as a class action or not at all."); *see also Marcus v. BMW of North America, LLC,* 687 F.3d 583, 594, 83 Fed. R. Serv. 3d 246 (3d Cir. 2012) ("As for its second objective, Rule 23(a)(1) creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually.").

Here, the relatively small size of the claims, the unsophisticated nature of the class, and the relatively small claims indicate impracticability, even for a class of 20-26 persons. The class members are largely Spanish speakers with little to no regular access to counsel. Ex. A ¶¶ 10-11. The named Plaintiffs had difficulty finding counsel for this case and only secured non-profit counsel through the assistance of Mexican consulate. *Id.* ¶ 10. The named Plaintiffs and their counsel have attempted to find the remaining class members and have only been able to join two

5

during the pendency of the case, bringing the total number of named Plaintiffs from 7 to 9. *Id.* ¶ 10; *See* Doc. 50 (allowing an amended complaint adding two new Plaintiffs). Defendants have similarly lost contact with the class. Ex. B, Westco 30(b)(6), 101:5 to 101:7 ("I lost contact with them, and I asked Jesus, and he didn't have contact with them through the time after. So I lost all – I lost all contact from them."). The apparent geographic dispersal of the Workers cuts toward certification, while the use of an experienced class administrator could assist in ensuring that the class is made whole for even these small claims. *Rodriguez v. Bar-S Food Co.,* 567 F. Supp. 1241, 1247 (D. Colo. 1983) (court should consider "geographic dispersion" when analyzing numerosity); Ex. E ¶ 15 (Plaintiffs' counsel's experience working with claims administrators and low wage workers).

Finally, though admittedly a close case on numerosity, "the interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action." *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968); Newberg on Class Actions § 3:12 (5th ed.) (citing Fed. R. Civ. Proc 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Cortez v. Nebraska Beef, Inc.,* 266 F.R.D. 275, 289 (D. Neb. 2010) ("where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c) (1)") (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983))).

2. **Commonality**

The proposed class also meets the Fed. R. Civ. Proc. 23(a)(2) commonality requirement. As to this class claim, this case is a simple one. There is little case law interpreting Wyo. Stat. Ann. § 16-6-110. Arguably, it requires that any person laboring on the Senior Center Project is entitled to overtime. If that is the case, there is one simple common question: did the Workers receive overtime for the hours they worked in excess of 40 in a week? The undisputed answer is

no. *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010) ("A finding of commonality requires only a single question of law or fact common to the class."). Alternately, Wyo. Stat. Ann. § 16-6-110 may require that the Workers be employees, rather than independent contractors, to be entitled to overtime. That would simply add another common question of whether or not the workers were misclassified as independent contractors. In either case, the answer to a basic common question or questions would resolve the overtime claim for the entire class. Because these questions, if answered in the affirmative, would resolve in "one stroke" issues central to the claims of the putative class, they each support a finding of commonality. *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

### 3. Typicality

The named Plaintiffs' claims are also "typical of the claims . . . of the class." Fed. R. Civ. Proc. 23(a)(3). The named Plaintiffs, like the entire class, undisputedly worked in excess of 40 hours in a week on the Senior Center Project and undisputedly did not receive overtime for that time. ECF Doc. 41-1; *see Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. June 1, 2011) ("A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class.").

### 4. Adequacy

Plaintiffs and Plaintiff's counsel can "fairly and adequately protect the interest of the class." Fed. R. Civ. Proc. 23(a)(4). There is no apparent conflict of interest between the potential class members and either the named Plaintiff or named Plaintiff's counsel. The named Plaintiff can only recover if he succeeds on legal theories that would also lead to recovery for the class. Moreover, the named Plaintiff's attorneys' incentives are aligned with the class as their contingent fee agreement with the named Plaintiff only allows the attorneys to be compensated if they successfully prosecute the suit. Ex. E ¶ 16 (Dec. of Attorney Hood); *see Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-1188 (10th Cir. 2002).

Finally, Towards Justice and its attorneys are uniquely qualified to prosecute this action. *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted) (adequacy of class counsel "implicates "the experience and competence of the attorney[s] representing the class."). Towards Justice has bilingual staff members that can communicate with the Spanish-speaking members of the class. Ex. E ¶ 5 (Dec. of Attorney Hood). Towards Justices' attorneys also have the experience necessary to competently pursue this litigation. Ex. E (Dec. of Attorney Hood); Ex. F (Dec. of Attorney Seligman).

## VI. PURSUANT TO FED. R. CIV. PROC. 23(b)(3) COMMON QUESTIONS OF LAW AND FACT PREDOMINATE AND A CLASS ACTION IS THE SUPERIOR METHOD OF RESOLVING THIS DISPUTE

### A. Predominance

For common questions of law or fact to predominate under Rule 23(b)(3), "[i]t is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that answers to those common questions" be dispositive of the plaintiff's claims. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). Rather, "the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotation marks omitted).

As with all prongs of Rule 23 certification, in addressing predominance the Court should take comfort in the continued role it can play, after certifying a class, in ensuring that the plaintiffs' claims are most efficiently prosecuted in a class action. *See, e.g.*, *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011) (affirming decertification of class where discovery revealed that individual issues would predominate).

Here, the simple question that predominates over all others is whether or not the Workers are entitled to overtime under Wyo. Stat. Ann. § 16-6-110. It is undisputed that the Workers

8

worked more than 40 hours per week and it is undisputed that the Workers were not paid overtime for those hours. Thus, the only question is whether the protections afforded in the statute apply to the Workers. If the class is entitled to overtime, each class member would be entitled to a different damages for that overtime. But individual questions with respect to damages only defeat certification if the class is unable to identify an efficient mechanism for establishing damages that corresponds with the "common theory of liability" certified for classwide treatment. *See, e.g.*, *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 88 (2d Cir. 2015).

Moreover, the Workers' time was kept on time sheets. Ex. 1 to Ex. B (time sheets). Simple mathematics applied to these time sheets would efficiently calculate the damages. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 670-71 (7th Cir. 2015) ("[I]t may be sufficient to demonstrate that the defendant failed to pay overtime without assessing a full aggregate liability. There would be a common method for showing individual damages—a simple formula could be applied to each class member's employment records—and that would be sufficient for the predominance and superiority requirements to be met." (quoting Newberg on Class Actions § 12:2)).

### B. Superiority

A class action is also the superior method of resolving this controversy. No other potential class member has demonstrated an interest in controlling this litigation. *See* Fed. R. Civ. P. 23(b)(3)(A)-(B). Furthermore, the District of Colorado is ideal for the concentration of this litigation because the named Plaintiffs entered into the relevant service contracts in Colorado, Defendant Westco's principal Place of business is in Colorado and Defendants Groathouse and Travelers, though out of state entities, are registered to do business in Colorado. 23(b)(3)(C). The putative class action is unlikely to be difficult to manage because underlying are Defendants' common policies regarding compensable overtime. 23(b)(3)(D).

Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of low-wage workers, most of whom lack English proficiency. Ex. A. ¶ 11; *see, e.g., Maez*, 268 F.R.D. at 397; *Cook v. Rockwell International Corp.,* 181 F.R.D. 473, 482 (D. Colo. 1998).

## VII. THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL

Should the Court grant Plaintiff's motion, it must appoint class counsel. Fed. R. Civ. Proc. 23(g). Plaintiffs' counsel, Alexander Hood and David Seligman (attorneys at Towards Justice), request appointment as class counsel.

The named Plaintiffs were referred to Towards Justice by the Mexican Consulate after struggling to find other counsel. Attorney Hood has invested at least 50 hours in identifying and investigating potential claims in the action. *See* Ex. E ¶¶ 6-7. Attorney Seligman has spent at least 10 hours investigating this case and researching issues related to this motion. Ex. F ¶ 6.

Towards Justice is a Colorado non-profit legal organization dedicated to representing low wage workers. Ex. E ¶ 8. Mr. Hood, Towards Justice's Director of Litigation, is currently litigating or has litigated multiple other wage-and-hour cases in the District of Colorado, including a number of class and collective actions. Ex. E ¶¶ 9-14. Mr. Seligman is a Towards Justice staff attorney. Mr. Seligman has researched and written on a number of topics related to class actions and class certification and attended a three-day "Class Action Training Institute" hosted by experienced class action practitioners from the Impact Fund. Ex. F ¶¶ 3-4.

### C. Resources Committed to Representing the Class

Towards Justice has committed to advancing all costs of this litigation, including the cost of issuing the class notice. Ex. E ¶ 4.

## VIII.   CONCLUSION

The named Plaintiffs request the following:

1. That the Court certify the class;

2. That the named Plaintiffs be named class representatives of any class certified by the Court;

3. That Alexander Hood and David Seligman be named class counsel.

Dated: 1/15/2016

                              Respectfully Submitted,

                              s/Alexander Hood
                              Alexander Hood
                              Towards Justice
                              1535 High Street, Suite 300
                              Denver, CO 80218
                              Tel.: 720-239-2606
                              Fax: 303-957-2289
                              Email: alex@towardsjustice.org

                              s/David Seligman
                              David Seligman
                              Towards Justice
                              1535 High Street, Suite 300
                              Denver, CO 80218
                              Tel.: 720-248-8426
                              Fax: 303-957-2289
                              Email: david@towardsjustice.org

                              Attorneys for the Plaintiff

## Certificate of Service

      I hereby certify that on 1/15/2016, I filed a true and correct copy of the forgoing using this Court's CM/ECF filing system which caused this document to be served on all counsel of record pursuant to F.R.C.P. 5.

                                                     s/ Alexander Hood
                                                     Alexander Hood