**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 15-cv-00168-WJM-KLM

AARON ROJAS *ET AL.*

Plaintiffs,

v.

WESTCO FRAMERS, LLC *ET AL.*

Defendants.

---

**REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR CLASS CERTIFICATION UNDER RULE 23(b)(3) AND APPOINTMENT OF CLASS COUNSEL UNDER RULE 23(g)**

---

## I. INTRODUCTION

To ensure that Plaintiffs can prosecute this case effectively, the Court should certify their motion for class certification. Doc. 60, Motion. In many ways, this case exemplifies the importance and efficiency of class litigation. Putative class members are 20-26 mainly immigrant, Spanish-speaking workers, none of whom received overtime pay for hours in excess of forty hours per week.

The majority of the arguments in Defendants' reply against certification, Doc. 61, are patently misplaced.[1] The only close question here is whether the putative class members are so numerous so as to make joinder impracticable. Although the number of class members—20 to 26—does not on its own trigger a finding of numerosity, it certainly allows for such a finding. And for all of the reasons explained in the Motion and here, that finding is supported by evidence that in this case joinder is impracticable.

[1] Defendants Groathouse Construction Inc. and Travelers Casualty and Surety Company of America are the only Defendants that timely responded. As used in this Reply, "Defendants" shall mean those two Defendants.

## II. THE PROPOSED CLASS IS COMPOSED OF 20 TO 26 WORKERS

In their Motion for Class Certification, Plaintiffs point to evidence showing that there are between 20 and 26 persons in the proposed class. *See* Doc. 60 at 4 n.3. In their reply, Defendants mistakenly state that "[t]hrough discovery, the parties have learned that of a maximum of 20 Westco framers who were working on the Sublette Center Project in Pinedale, Wyoming from October, 2013 through March, 2014, the number of framers who were allegedly not paid for all of their overtime hours at the Sublette Center Project is 14 Westco framers." Doc. 61 at 2.

Defendants misunderstand the nature of the class Plaintiffs seek to certify. Westco workers came and went from the Senior Center Project from October 2013 to March 2014. Doc. 60 at 3. Some of the workers were not paid *at all* for some of their hours, while none of the workers were paid overtime. The purported 14-person class that Defendants identify and dispute appears to cover only those workers whose time sheets suggest that they were not paid *at all* for some time. In its deposition, Westco clarified that these time sheets, which are Exhibit 1 to the Deposition, only include workers who were not paid at all from January 2014 to March 2014, not all of the workers that worked and were not paid overtime from October 2013 to March 2014:

> Q So you said that you -- you said earlier that the project -- that you began working on the project in October of 2013?
>
> A Yes.
>
> Q So there were presumably time sheets from the period between October 2013 until January?
>
> A Oh, yes. Correct.
>
> Q So are these just the -- these are the time sheets for -- that the framers were not paid?
>
> A Yes….

Doc. 60-2, Westco 30(b)(6) at 23:24 to 24:8; Doc. 60-3 (Ex. 1 to the Deposition).

By contrast, Plaintiffs seek certification of a class composed of workers who were not

paid overtime from October 2013 to March 2014—*i.e.*, every Westco worker—not just the workers who were not paid at all for some hours. *See* Doc. 60 at 3 n. 2 ("The Plaintiffs only seek to certify a class based on their statutory overtime claims under Wyoming [Law]."). It is undisputed that every Westco worker at the Senior Center Project worked more than 40 hours per week and were not paid any overtime. Doc. 60 at 3 (quoting Doc. 60-2, Westco 30(b)(6) at 98:24 to 99:5 ("Q: [D]id those framers sometimes work more than 40 hours a week? A: Yes. Q: Did any of them receive overtime pay or increased pay for time that they worked over 40 hours a week? A: No.")).

The class is therefore composed of *every* Westco worker that worked on the Senior Center Project from October 2013 to March 2014. The named Plaintiffs remember at least 20 employees in their group of Westco workers and an additional group of four to six Westco workers who also worked with them on the project. Doc. 60-1 ¶ 6. Defendant Westco remembers approximately 20 workers. Doc. 60-2, Westco 30(b)(6) at 99:9 to 99:12 ("Q: … you said there were approximately 20, but not all 20 of the framers were onsite in March? A: Yes."). The proposed class thus includes 20-26 Westco workers.

Finally, to the extent there is uncertainty regarding class size, the Court should err on the side of certification. Doc. 60 at 6 (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) ("the interests of justice require that in a doubtful case, . . . any error, if there is to be one, should be committed in favor of allowing the class action.")).

## III. IMPRACTICABILITY OF JOINDER FOR A CLASS OF LOW WAGE SPANISH-SPEAKING WORKERS

### A. Legal Framework for Determining "Numerosity"

Whether a proposed class is so numerous as to make joinder "impracticable" turns on a case-by-case analysis that looks to a number of factors. In performing this analysis, courts are mindful that impracticability does not mean "impossibility," *M.K.B. v. Eggleston*, 445 F. Supp.

2d 400, 440 (S.D.N.Y. 2006), and that "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Rather, "[t]o meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join *all* class members." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 229 (D.N.J. 2005) (internal quotation marks omitted) (emphasis added).

Most relevant to this case, courts engaging in this "common sense" analysis look to factors like:

- geographic dispersion, *Recinos-Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 478 (E.D. La. 2006);
- English fluency, *id.*;
- financial resources of class members, *Robidoux*, 987 F.2d at 936;
- whether class members, rationally or irrationally, may fear bringing suit individually, *Arkansas Ed. Ass'n v. Board of Ed. of Portland, Ark. School Dist.*, 446 F.2d 763, 765-66 (8th Cir.1971) (finding numerosity was not error when teachers suing school district for race discrimination had a "natural fear or reluctance" to bring individual actions against their employer school district); *Tanedo v. E. Baton Rouge Par. Sch. Bd.*, No. LA CV10-01172 JAK, 2011 WL 7095434, at *6 (C.D. Cal. Dec. 12, 2011); and
- class members' relative lack of sophistication or familiarity with the American legal system, *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1014 (W.D. Mich. 1987).

There are no bright-line rules governing the "numerosity" analysis. The question involves the application of the facts of the case to prudential and pragmatic considerations about what would likely happen if class certification were *not* granted. At bottom, if it is "difficult" for "*all*

class members" to file individual actions, then the numerosity requirement is satisfied. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 229 (D.N.J. 2005) (internal quotation marks omitted) (emphasis added).

**B. <u>Application to This Case</u>**

In this case, it would be quite difficult for all class members to file individual actions. As an initial matter, in light of the reliable evidence suggesting that the class consists of at least 20 members, there is—contrary to Defendants' assertions—no "presupposition against numerosity" at play here. Defs.' Resp. at 5. Classes of this size are certified where the circumstances suggest that class members are unlikely to file individual actions. *See, e.g.*, *Geneva Rock Prods., Inc. v. United States*, 100 Fed.Cl. 778, 788 (2011) (class of 23 members satisfied the numerosity requirement because the cost of litigating the claims individually would have been prohibitive); *Lau v. Arrow Fin. Servs.*, LLC, 245 F.R.D. 620, 625 (N.D. Ill. 2007) (certifying subclass with 26 members).

Furthermore, the circumstances of this case exemplify the importance of the class action device to offset the difficulty low-wage, immigrant workers face in pursuing individual claims in court. The class members here are largely Spanish speakers with likely little familiarity with the American legal system. Doc. 60-1 ¶¶ 10-11. Although (remarkably) nine have come forward to join this case individually, it is extraordinarily unlikely that others would file their own individual claims. Defendants suggest that the class members are easily "identifiable" and "located in a single geographic" location. But there is no evidence to substantiate these bald assertions. Plaintiffs' counsel and named Plaintiffs have not, at this stage, been able to locate absent putative class members. Doc. 60-1 ¶ 10. And even Defendant Westco does not know how or where to find these former employees. Doc. 60-2, Westco 30(b)(6) at 101:7 ("I lost all contact from them.").

In light of the (1) difficulties of finding potential class members at this time, (2) their lack

of familiarity with English and the American legal system, (3) their lack of sophistication, and (4) possible fears about becoming named plaintiffs, *see, e.g.*, *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001), denying certification of Plaintiffs' claims would allow Defendants' to obtain a windfall that will unlikely be reclaimed by former employees because of the impracticability of joinder. By contrast, by certifying this action, the Court will provide a mechanism for Plaintiffs to obtain redress that is otherwise unlikely. Doc. 60-6 ¶ 15 (describing claims administrators' ability to identify absent class members after resolution of a class action).

## IV. ADDITIONAL PREREQUISITES FOR CLASS CERTIFICATION

Defendants' other arguments against certification merit short shrift. "Questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). Defendants argue that predominance is not satisfied because "[e]ach framer is claiming a different amount owed, different[] hourly rates, different time periods of work, and different number of hours worked." Defs.' Resp. at 8. That argument ignores, however, that courts consistently certify classes that involve individualized damages determinations. *See, e.g., Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) (in the context of a NY class action wage claim, "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)").

In the wage-and-hour context, a single formula can often be applied to mechanically calculate individual damages based, for example, on the worker's hourly wage and the number of hours worked. *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 472 (S.D.N.Y. 2014) (certification appropriate where "(1) damages [are] capable of class-wide determination, or (2) individual damage calculations are simple and mechanical, so as not to overwhelm questions common to the class."). Those variables are easily determinable in this case. And, although this case may raise other questions—like whether Groathouse employed plaintiffs—those questions

implicate legal and factual issues that are common to the class.

Defendants also suggest that class certification is inappropriate because "the particular court at issue is not a desirable forum to adjudicate the aggregate dispute." Contrary to Defendants' argument, Rule 23(b)(3) does not require that the forum at issue be the *only* forum for where the dispute can be adjudicated, or even that it be the *best* forum. "In situations where potential plaintiffs, witnesses, and evidence are scattered throughout the country, courts have interpreted this factor as requiring some kind of rationale as to why it would be efficient for that particular court to hear such a massive class action lawsuit." *Sweet v. Pfizer*, 232 F.R.D. 360, 373 (C.D. Cal. 2005). This case does not involve evidence spread out across multiple forums. Plaintiffs reside in Colorado worked for Defendant Westco, which was based in Colorado. Although Defendant Groathouse is based in Wyoming, the District of Colorado is an efficient forum to adjudicate this dispute.

Finally, Defendants argue that the "class description is not definable." This argument appears to be grounded in concerns with (what some courts call) "ascertainability." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012) ("An identifiable class exists if its members can be ascertained by reference to objective criteria." (internal quotation marks omitted)). The class here, however, is easily identifiable as everyone who worked for Westco on the Sublette County Senior Center Project. This definition is precise, objective, and easily ascertainable. Manual for Complex Litigation § 21.222 (4th ed. 2004). Moreover, contrary to Defendants' suggestions *all* of these class members were clearly affected by a common policy of not paying overtime for hours worked in excess of 40 per week. *See*, Doc. 60 at 6-7 (common policy of not paying overtime), 8-9 (common overtime policy predominates) Doc. 60-1 ¶¶ 7-8; Doc. 60-2, Westco 30(b)(6) at 98:24 to 99:5 ("Q: [D]id those framers sometimes work more than 40 hours a week? A: Yes. Q: Did any of them receive overtime pay or increased pay for time that they worked over 40 hours a week? A: No.").

## V. CONCLUSION

Plaintiffs request their Motion be granted.

Dated: 2/19/2016

Respectfully Submitted,

s/Alexander Hood
Alexander Hood
David Seligman
Towards Justice
1535 High Street, Suite 300
Denver, CO 80218
Tel.: 720-239-2606
Fax: 303-957-2289
Email: alex@towardsjustice.org

Attorneys for the Plaintiffs

**Certificate of Service**

       I hereby certify that on 2/19/2016, I filed a true and correct copy of the forgoing using this Court's CM/ECF filing system which caused this document to be served on all counsel of record pursuant to FRCP 5.

                                                       s/ Alexander Hood
                                                       Alexander Hood